Luis J. Nicole, Plaintiff and Appellee, v. Ponce Yacht Club, Defendant and Appellant.

No. R-66-229.      Decided June 26, 1968.

*Charles R. Cuprill* for appellant. *Hartzell, Fernández & Novas* and *Vicente M. Ydrach* for appellee.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

The question in issue is whether it is proper to find appellant liable for the damages caused to appellee as a result of the destruction of his yacht due to the fact that appellant tied said vessel with a rope to a mooring buoy belonging to appellee, from which it was separated by cyclonic winds which passed about 200 miles south of Ponce. The trial court concluded that the mooring of the yacht to the buoy was negligently performed by appellant and that, therefore, the latter should be liable for the damages caused to appellee. We conclude that said decision is not warranted by law, and therefore, the judgment in this case should be reversed and the complaint dismissed.

Appellee, Luis J. Nicole, was the owner of the yacht "Mariebess". He was a member of appellant club. After repairing the yacht he left it in the slip of the club, where, at appellee's request, the club provided additional fastenings to tie the yacht more securely to the slip. Appellee had to pay $16 monthly for the use of said slip. According to the internal regulations which governed the relations of the members of the club, the latter did not assume any liability whatsoever for the damages sustained by the yachts while they were using the slips. The monthly payment, which was different for each member, depended on the size of the yacht, and included the supply of water and electricity needed by

the yacht. If the yacht needed repair or care, the club charged an additional amount to each member.

Appellee Nicole did not use said yacht "Mariebess" for one year, but he had an employee who went every month or month and a half to the yacht to clean it and drain it. During all that time appellee went only once to the club with his daughters and his daughters' friends. On that occasion, the only time he went there, the yacht was in the slip.

Sometime before September 25, 1963 the manager of the club, Vidal, requested appellee's authorization to transfer the yacht from the slip to a mooring buoy, property of appellee, which the latter had in the bay of the club. There is an unreconcilable conflict in the evidence as to the time request for said authorization was made. According to appellant it was about six months prior to September 25. According to appellee's evidence it was a month and a half before. In any event, there is evidence in the sense that sometime prior to said date the authorization was requested. There arises another conflict as to whether or not the authorization was granted. However, it is evident that with or without the authorization, the yacht was transferred to the mooring buoy. However, it clearly appears from appellee's testimony itself that he knew that said yacht had been removed. Let us examine his testimony as to this aspect.

"Mr. Ydrach:

Nicole, do you remember any occasion when Vidal called you on the telephone or saw you personally in your establishment prior to the cyclone of September '63 and asked your permission to move the 'Mariebess' from the slip to the mooring buoy, and that you had given your consent?

Witness:

No, sir, Vidal called me on the telephone about a month and a half or two months prior to the cyclone and suggested to me to remove the boat, that the charge was fifteen dollars; that the mooring buoy would be cheaper; actually, he called me, and I told him no, not to move the boat; *subsequently, he sent*

*an employee of the club or somebody to my office to tell me to go there to witness the removal of the boat; I was not present."* (Italics ours.)

The employees of the club removed the yacht from the slip and transferred it to the mooring buoy, where they tied it with a one-inch-thick rope, because the mooring chain, property of appellee, was dirty, full of sea weeds, and the employee, when he pulled it out, hurt his hands.

On September 25, 1963, the passing of a cyclone near the southern coast of Puerto Rico was announced. It passed about 200 miles south of Ponce. The yacht "Mariebess" broke its mooring ropes and was driven by the wind and tides up to Cardona Island, south of Ponce, where it ran aground. The trial judge found that there existed a bailment relationship between appellee and appellant and decided that the club was negligent in tying the yacht with a rope to the mooring buoy for which reason it found it liable for the damages caused to appellee as a result of the yacht having become loose from the buoy. The damages, according to the trial court, consisted of:

|       |                                                                                                            |             |
| ----- | ---------------------------------------------------------------------------------------------------------- | ----------- |
| (a)   | Destruction sustained by the yacht                                                                         | $10,000.00  |
| (b)   | Amount to be spent for moving the yacht to San Juan, the only available place where it could be repaired   | 2,500.00    |
| (c)   | Amount paid by appellee to the watchmen who took care of the yacht in Cardona Island                       | 2,252.50    |
| (d)   | Amount paid by appellee for moving the vessel                                                              | 400.00      |
| (e)   | For the loss of use, pleasure, and enjoyment of the vessel                                                 | 1,000.00    |

Appellant's ten assignments challenge, in synthesis, the conclusion of the court to the effect that (1) the existing relationship between the parties in this case is that of bailor

and bailee; (2) the operation of mooring the yacht to the mooring buoy was performed negligently; (3) appellant is liable for the damages suffered by appellee; (4) the granting of damages is improper and excessive; (5) failing to find appellee negligent in having his vessel abandoned and in failing to secure it in view of a storm warning.

1. The bailor-bailee relationship did not arise from the mooring of appellee's vessel to appellant's slip. The basic determination to be made in the decision as to whether, in a particular case, a contract of bailment has been executed is whether or not the delivery of the thing has been accomplished, whether the bailee has received the effective possession and control of the thing to the point of excluding the possession of the owner himself as well as of any other person. *Rivera* v. *San Juan Racing Ass'n, Inc.*, 90 P.R.R. 405 (1964). In the case at bar the evidence does not reveal that appellant had received the exclusive possession of the vessel. It reveals the contrary. Appellee himself testified in a deposition which is admitted in evidence, that the only person who exercised the control and possession of the yacht while it was in the slip was himself "as its actual owner"; he could take it out as often as he wanted to without it being necessary to notify anyone. He also testified at the hearing that he had an employee who went every month or month and a half to clean and drain the yacht. In his testimony he stated thus: "There is no written contract, but rather there is an agreement with the club house to provide its members with water, electric current; if anything happens to the boat the club employees take over and fix it; if the vessel becomes loose they go in search of it, and they have a watchman who makes the rounds during the night and sees that everything is in order, and they keep our boats under these conditions."

In view of the foregoing the trial court erred in concluding that there was a contract of bailment between the litigants.

2. The trial court sustained that appellant was negligent in permitting his employees to move the vessel in question from its slip to the mooring buoy, with or without appellee's authorization, and to moor it to said buoy with a rope instead of using the mooring chain of the buoy, and that, therefore, it is liable to appellee for the damages suffered resulting from the separation of the vessel from the buoy.

■ For the purpose of determining whether appellant was negligent in mooring the yacht to the buoy with a rope, we must determine whether the damage caused to appellee was or was not reasonably foreseeable. *Pabón Escabí* v. *Axtmayer*, 90 P.R.R. 20, 24 (1964).

In the case at bar there is evidence that the yacht was tied with a one-inch-thick rope to the mooring buoy and that said yacht was there for a term of six months or for a term of a month and a half prior to the storm. The testimony of the expert witnesses, even those for appellee, was in the sense that under normal circumstances, if the rope is thick enough and the yacht is correctly moored, said kind of mooring is perfectly correct. Prior to the cyclone, during the time the yacht was moored thereto, there is no evidence to show that anything happened to it. It is inferred therefrom, as the expert witnesses testified, that under normal circumstances said mooring is perfectly correct. The question is whether appellant could reasonably foresee the magnitude of the effects of the cyclone which passed about 200 miles off the coast south of Ponce and also to foresee that appellee would fold his arms and not undertake to protect his property.

The practice in Ponce, as it appears from the evidence and from appellee's own testimony, is that during the storm season, the owners of vessels remove their yachts from the

slip and cast anchor in Guayanilla. Even those who leave them in the slip undertake to assure themselves that they are safely moored and for further security they provide them with more tyings.

We do not believe that appellant could foresee when the cyclone warning was issued, that appellee would neglect to protect his vessel, like the other yacht owners did in appellant's slip. It could not foresee either that a cyclone which passed 200 miles off the coast south of Ponce would cause such winds and swells which destroyed not only appellee's vessel, but also the only yacht which was moored in appellant's slip and the road which connected the bridge with the club house.

In view of the foregoing the judgment rendered in this case by the Superior Court, Ponce Part, on June 21, 1966, will be reversed, and another rendered dismissing the complaint.